## ACME–EVANS CO. v. CLEVELAND, C., C. & ST. L. RY. CO.

No. 5369.

Circuit Court of Appeals, Seventh Circuit.
June 25, 1935.

Rehearing Denied July 30, 1935.

Charles Remster, H. H. Hornbrook, Albert P. Smith, Paul Y. Davis, Kurt F. Pantzer, Ernest R. Baltzell, and William G. Sparks, all of Indianapolis, Ind., for appellant.

Harry N. Quigley, Samuel W. Baxter, and Charles P. Stewart, all of Cincinnati, Ohio, and Frank L. Littleton, of Indianapolis, Ind., for appellee.

Before EVANS, FITZHENRY, and ALSCHULER, Circuit Judges.

EVANS, Circuit Judge.

Counsel for the respective parties are to be commended for their efforts in pre-senting the involved facts of this case in the form of fact stipulations, which were adopted by the court as its findings. The facts are set forth concisely and logically so that the minimum amount of effort is required to understand the controversy.

Numerous defenses were advanced by appellee, but in view of our conclusion respecting the authority of appellant's agent —a conclusion which is fatal to appellant's case—our statement of facts will be confined to that part of the story which makes opposing counsel's position on this defense, understandable.

Appellant is an Indiana corporation engaged in milling grain and selling its products. Appellee is a common carrier of freight and served appellant's mill. Grain was shipped over appellee's road under a so-called milling and transit tariff, which was duly filed with the Interstate Commerce Commission and the Public Service Commission of Indiana. This tariff provided in substance that grain received at the mill and milled in transit—that is, converted into its products and reshipped over appellee's lines under stated conditions—should move at the through rate in effect from point of origin of grain to destination of product, plus a milling charge of one-half cent per hundred pounds, not less than $3.60 per car. The published rate on inbound grain shipments was collected. Likewise, outbound freight charges were paid. Then followed the presentation of claims for refund by appellant. These were paid by appellee as hereinafter more particularly described. During the period in controversy, which began February 16, 1926, and ended May 4, 1928, claims aggregating $158,553.72 were filed on behalf of appellant and actually paid to appellant by appellee.

The amount sought, $102,435.17, is the aggregate of claims of exactly similar character to those which were paid. There is no question about the correctness of the amount. Nor is there question as to the one time existence of such claims. Appellee contends they also were paid.

Avoidance of liability turns upon appellee's right to make payments to "E. R. Bacon" upon claims presented by Harry J. Irwin in the name of E. R. Bacon. That payments were made and that appellant received none of them are conceded. Equally uncontradicted is the fact that Harry J. Irwin, appellant's traffic manager, obtained the letters addressed to E. R. Ba-

con which contained the drafts, cashed the checks, and converted the money to his own use. Of this conversion appellant had no actual knowledge until after Irwin died.

Irwin's position and his authority in the appellant company is set forth by the court in a finding, the substance of which we shall briefly state:

"* * * (Appellant) * * * from * * * 1917 * * * to February 9, 1929, employed * * * Harry J. Irwin, as its traffic manager; he was also a stockholder and a director * * *. Some time in the month of January, 1926, * * * Irwin, who was then the traffic manager * * * stated to * * * (appellee's) accountant * * * that one E. R. Bacon of Chicago was going to store grain in the elevator of * * * (appellant) and that if * * * (appellant) milled it, as they probably would, it would be milled and purchased from the said Bacon * · * *; that the inbound freight charges would be paid by the * * * (appellant), but that they would be charged back to Bacon; that the refund claims would be filed by * * * (appellant) for Bacon, keeping them separate from their own, and that the freight having been charged back to Bacon, he naturally would be entitled to the refund, and that it would accrue to him."

Appellee's office force was informed that:

"* * * refund claims of (appellant) * * * would be presented in the name of E. R. Bacon, * * * and if found correct refund authority should be issued to the defendant's cashier * * * to issue drafts * * * payable to E. R. Bacon for the respective amounts. of such refunds. During the period here involved, and prior thereto, when refund claims were presented * * * (appellee after investigation) * * * issued a draft in favor of (Bacon) * * * for the refund claims (thus filed)."

During the entire period from 1926 to 1928 Irwin handled or directed all of appellant's business pertaining to freight traffic. He kept the records pertaining to its traffic business, made out all of the milling-in-transit claims that were filed against appellee; attended and participated in directors' and stockholders' meetings; either filed, or caused someone in his department, under his direction to file all of appellant's milling-in-transit claims. *The filing of such claims was left entirely to him.* He was

authorized to and did open appellant's mail pertaining to traffic matters; he made written reports concerning milling-in-transit accounts; he handled a good many matters for appellant which were not connected with the traffic department, such as conferring with the railroad company for the procuring of side-track bumpers, arranging, repairing, and laying additional switches, and having correspondence with the railroad company in relation thereto. He dealt personally with appellee in relation to all milling-in-transit claims of appellant. At no time was appellee notified of any limitation on Irwin's authority to conduct appellant's railroad freight traffic business. The inference is strong that there was no limit to his authority.

Irwin was never at any time expressly authorized to endorse, sell, assign or transfer the paid freight receipts evidencing the refund claims in controversy in this suit, nor to assign and transfer such claims.

The question narrows down to one of action of Irwin and of Irwin's authority to so act for appellant. There can be no doubt but that Irwin's authority as traffic manager was wide and well nigh unlimited so far as traffic matters were concerned. He was authorized to present and to collect refund claims and did so time and time again. The right to collect seems to have been about as clear as the right to present claims. For years such claims had been presented by him, and payments by draft or check had been made and the check turned over to him.

Refund claims aggregating approximately $150,000 a year were presented by Irwin and paid by the railroad on the assumption that Irwin was authorized to act for appellant. All of these checks given in payment of refund claims were deposited by Irwin in appellant's bank account.

In the phase of the question now before us, appellant's claim would be stronger if the payments had been made to a third party. While the drafts were made payable to one E. R. Bacon, the proceeds derived therefrom were ultimately paid to Irwin. E. R. Bacon was not, in fact, a third party. He was Irwin. Payment, therefore, was actually made by appellee to Irwin, who in turn was authorized to present claims and accept payments on presented claims for appellant.

· Irwin represented appellant. We are unable to reach any conclusion other than that Irwin was authorized to receive pay-

ments as well as to present the claims. Even if payments by appellee to Bacon were unauthorized, they actually reached Irwin. Payment to Irwin was payment to appellant. Subsequent conversion or embezzlement by Irwin was appellant's, not appellee's loss.

We are likewise of the opinion that Irwin would have had the authority to direct the payment of the refunds to E. R. Bacon had Bacon been a grain shipper who was selling grain to appellant.

The disposition of refunds was a matter in which appellee was not interested. It was none of its concern. If the appellant saw fit to purchase grain, making certain contingent or conditional arrangements with the grain company from which it bought grain, and the latter thereby became entitled to the refund, appellant could direct the appellee to make the payment of the refund to such party. The only question of possible doubt is over the authority of appellant's traffic manager to so direct appellee to make payments.

Upon the evidence showing authority exercised by Irwin with the knowledge of appellant, the trial judge was justified in concluding that authority to designate Bacon as the party to receive the refunds was lodged in Irwin.

There are other defenses—estoppel, Federal court jurisdiction, etc., which we need not consider. The District Court very properly met the issue squarely and disposed of the case on its merits.

The judgment is affirmed.